# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KHALIL TERRY,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>ANDRE MATEVOUSIAN, Warden,<br><br>　　　　Respondent. | Case No.: 1:15-cv-00372-LJO-JLT<br><br>FINDINGS AND RECOMMENDATION TO DENY THE PETITION FOR WRIT OF HABEAS CORPUS (Doc. 1)<br><br>ORDER DISREGARDING MOTION TO EXPEDITE A DECISION ON THE MERITS OF THE PETITION AS MOOT<br>(Doc. 18) |

　　　　Petitioner claims the Bureau of Prison failed to notify inmates that guards could search an inmate's waistband.  He asserts this lead to him being charged with a rules violation for assaulting the officer who attempted the search. Petitioner claims also that during the prison disciplinary proceeding, the hearing officer denied him due process.  In this action, he seeks restoration of the 27 days of credit taken from him as punishment for the assault.  For the reasons set forth below, the Court recommends the petition be **DENIED**.

I. **Procedural Background**

　　　　Petitioner does not challenge his underlying conviction and sentence. He challenges a prison disciplinary hearing held on October 9, 2014, in which prison officials found him guilty of assault and assessed him a loss of 27 days credit.  Petitioner presents several claims: 1. That he was denied due process because the BOP failed to provide notice to inmates that their waistbands could be searched; 2. That he was denied due process at the prison disciplinary hearing because: his act of touching the

1

officer was involuntary; the hearing officer failed to provide an accurate written statement of the evidence upon which he relied; and, the hearing officer was biased.

## II.  Factual Background

On July 17, 2014, a guard at USP Atwater, Officer Ramos, ordered Petitioner to submit to a pat down search after the guard observed him to be "out of bounds." (Doc. 15-1 at 14) Ramos reported that during the search, that Petitioner "assaulted [him] by grabbing and pushing my hand away." Id. As a result, the officer prepared an incident report that resulted in Petitioner being charged with "[a]ssaulting any person without serious injury." Id. at 21.

Prison officials gave Petitioner written notice of the charge on the same date. (Doc. 15-1 at 11) On July 17, 2014 at 6:40 a.m., a prison official, Lieutenant Bolter, advised Petitioner orally of his right to remain silent as well as the consequences of doing so. Id. at 15.  Bolter also served a copy of the incident report at the same time. Id.  The next day, C. Wohld served Petitioner with a "Notice of Hearing Before the (DHO)" on July 18, 2014 and he acknowledged receipt of it. (Doc. 15-1 at 17) On the signed acknowledgement, Petitioner indicated he wished to have a witness, John Waller, testify at the hearing. Id.  He asserted that inmate-Waller would testify that Petitioner "inadvertently slapped [the guard's] hands." Id.  In addition, Petitioner requested that Lt. Putnam act as his staff representative. Id.

Along with the hearing notice, C. Wohld served Petitioner a document entitled, "Inmate Rights at Discipline Hearing." (Doc. 15-1 at 17) This document detailed his rights including, the right to receive a written copy of the charges 24 hours before the hearing to have a staff representative, to call witnesses, to present a statement or to remain silent, to appear at the hearing, to be advised of the DHO's decision and the facts supporting it, and t to appeal the DHO's decision within 20 days. Id. He acknowledged these rights. Id.

At the hearing, held on July 22, 2014, Petitioner's staff representative, Lt. Putnam, appeared via telephone and presented his findings. (Doc. 15-1 at 2, 21) At Petitioner's request, Putnam reviewed the video of the incident and remarked, "The video appeared to me that inmate Terry slapped staffs [sic] hand away [and] he never reached for his belt." Id. at 21. Petitioner stated, "I did not slap his hands. I may have inadvertently touched the staff; he put his hands in my pants." Id. Waller did

2

not appear at the hearing. Id. However, Petitioner agreed, "Inmate Waller would say the same thing [Petitioner] did that [Petitioner] did not slap the staff. Terry may have inadvertently touched the staff." Id.

The DHO considered also the memos from Officer Ramos that "Khalil assaulted him by slapping his hand away," and Officer Helling who "state[d] inmate Khalil became verbally assaultive and shoved the officers [sic] right hand away." (Doc. 15-1 at 22) As a result, the DHO found Petitioner guilty of the offense. Id.

Petitioner appealed the determination and the Regional Director directed that the discipline hearing be re-heard. (Doc. 15-1 at 26) The Regional Director found that the staff representative, Putnam, was not physically present at the hearing and the witness, Inmate Waller, was not called to testify. Id. The Regional Director determined these errors required the matter to be re-heard. Id.

The re-hearing occurred on October 9, 2014. (Doc. 15-1 at 32) In advance of the hearing, prison officials again served Petitioner notice of the hearing and notice of his rights. Id at 28, 30. Once again, Petitioner acknowledged receipt of these documents in writing.[1] Id. Also again, Petitioner asserted that he wanted inmate Waller to testify and, though he requested a staff representative, this time he requested Lt. Hayes act in that role. Id. at 28.

At the new hearing, Petitioner appeared with Hayes. (Doc. 15-1 at 32) Petitioner denied the assault and stated, "I did not assault staff. I may have inadvertently touched the staff." Id. Likewise, Waller testified, "Me and Terry were talking and the staff called him for a pat search. Inmate Terry cooperated with staff in the search. Inmate Terry loosened his belt to assist the staff in the search. I did not see the assault on the staff."[2] Id. at 23. At Petitioner's request, Hayes viewed the video of the incident and reported. "It appeared on the video that inmate Terry pushed the officers [sic] hand away during the pat search." Id. Hayes also spoke with Officer Ramos who reported, "The incident should be dismissed as inmate Terry has suffered enough from the incident and I may have overreacted." Id. Though Ramos did not testify at the hearing, the DHO found this was not necessary because his testimony was adequately set forth in his written report. Id.

---

[1] He was not served with the incident report a second time. (Doc. 15-1 at 32)
[2] It appears that Waller also stated that, "inmate Terry never assaulted the staff." (Doc. 15-1 at 32)

In considering the evidence, the DHO found that the weight of the evidence established that Petitioner assaulted Ramos. (Doc. 15-1 at 23) The DHO considered the fact that Ramos now felt that Petitioner had "suffered enough" but determined this opinion was entitled to little weight and that the written account provided by Ramos at the time of the incident was entitled to great weigh. Id. Coupled with the corroborating statement of the witness-officer, Helling, and the video of the incident showing Petitioner push Ramos' hand away during the search, the DHO found Petitioner guilty of the offense and assessed a loss of 27 days credit and other sanctions. Id. at 35.

Petitioner appealed the determination. (Doc. 1 at 33-34) In the appeal, Petitioner raised several claims. One claim was that Hayes did not testify at the hearing that he saw on the video Petitioner push Ramos' hand away during the pat down search. Id. at 34. He asserted that the DHO made up this testimony. Id. Petitioner also claimed that he was not served with the incident report nor made aware that it could be used as evidence. Id. He also claimed that the DHO ignored the statement from Ramos that the disciplinary proceeding should be dismissed. Id. Finally, he asserted that the rehearing should not have been conducted by the same DHO who held the initial hearing because the DHO was biased. Id.

The Regional Director, Juan Castillo, denied the appeal. (Doc. 1 at 36) Castillo noted that the DHO considered the new statement from Ramos but that the DHO was entitled to afford this statement little weight. Id. Likewise, Castillo rejected the claim that Hayes did not testify as described by the DHO noting, "we found no evidence to support your claim." Id. Rather, Castillo noted, "your staff representative stated during the DHO hearing that video evidence shows you pushing staff's hand away, during a pat search. Such behavior is consistent with an assault." Id. Finally, Castillo reported that Petitioner's other claims "had been investigated and determined to be without merit."[3] Id.

**III. Discussion**

    **A. Jurisdiction**

A federal prisoner may challenge his confinement under via a petition for writ of habeas corpus, if he contends it violates the Constitution or federal law or treaty. 28 U.S.C. § 2241(c)(3);

---

[3] Petitioner filed a further appeal to the General Counsel of the BOP. (Doc. 1 at 37-40) It was denied by operation of law. (Doc. 15 at 3)

4

Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his due process rights while held as a federal prisoner in Atwater, California and that he suffered a loss of credits which impacts the duration of his sentence. Thus, the Court has subject matter jurisdiction and venue is proper. Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 494–95 (1973); Brown v. United States, 610 F.2d 672, 677 (9th Cir.1980).

### B. Claims

In this action, Petitioner raises two basic claims. First, he claims that his due process rights were violated because the BOP failed to give inmates notice that their waistbands could be search during a pat down search. (Doc. 1 at 6-7, 13-14) Second, he claims he was deprived of due process because, in essence, the DHO failed to come to the correct decision, the DHO misrepresented the content of Hayes's testimony and because the DHO was biased. (Doc. 1 at 7-8, 15-17)

#### 1. The Court lacks habeas jurisdiction related to whether the BOP provided notice about how officers would conduct pat down searches.

Petitioner cites to no authority that supports his claim that the BOP must provide him advance notice of how searches will occur. He fails to provide any legal authority that, even if advance notice was required, that this issue would invoke the Court's habeas jurisdiction.

As recited above, a habeas petitioner may invoke this Court's jurisdiction as to claims that his custody violates the United States Constitution or federal law or treaty. 28 U.S.C. § 2241 (c)(1), (3). The petitioner may not challenge a condition of his confinement—namely, the manner in which officers conduct pat down searches or whether the BOP must give advance notice of the manner in which officers will conduct searches—in a section 2241 petition. The proper mechanism for a prisoner seeking to challenge the conditions of his confinement is an action under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). *See also*, e.g., Nostratis v. Surgue, 2009 WL 462732 at *1 (E.D.Cal. Feb.23, 2009) (claim inmate is entitled to transfer to a different facility may not be raised in a § 2241 proceeding); Evans v. U.S. Penitentiary, 2007 WL 4212339 at *1 (E.D.Cal. Nov. 27, 2007) (no habeas relief under § 2241 related to claims regarding a transfer and inadequate medical care).

Moreover, as pointed out by Respondent, the Ninth Circuit has long held that pat down

searches—even those including an inmate's groin—do not violate the Constitution. Grummett v. Rushen, 779 F.2d 491, 495 (9th Cir. 1985). Here, of course, the search of Petitioner attempted by Ramos was much less intrusive than that in Grummett. Moreover, notably, Petitioner's witness—inmate Waller—specifically testified that when the guard told Petitioner he would be searched, "Petitioner Inmate Terry cooperated with staff in the search. **Inmate Terry loosened his belt to assist the staff in the search**." (Doc. 15-1 at 23, emphasis added) Thus, there is no evidence Petitioner was unaware that his waistband could be searched. In any event, the fact that the BOP did not specifically tell Petitioner that guards may search his waistband does not give rise to habeas jurisdiction. Thus, the Court recommends the claim be **DISMISSED**.

### 2. The DHO did not violate Petitioner's due process rights

#### a. Due Process requirements

Prisoners are not entitled to full constitutional rights given the needs and objectives of the prison. Wolff v. McDonnell, 418 U.S. 539, 555 (1974). Prison disciplinary proceedings likewise reduce the rights to which the inmate is entitled. Id. at 556. Indeed, a prisoner's due process rights must accommodate the "legitimate institutional needs" of a prison. Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir.1989), citing Superintendent, etc. v. Hill, 472 U.S. 445, 454–455 (1984).

As a result, a prisoner is entitled to receive: advance written notice of the disciplinary charges at least 24 hours before the hearing; an opportunity—when it does not conflict with institutional safety and correctional goals—to call witnesses and present documentary evidence; and a written statement the evidence the hearing officer relied upon and the reasons supporting the result. Hill, 472 U.S. at 454; Wolff, 418 U.S. at 563–567. Finally, due process requires that the decision be supported by "some evidence." Hill, 472 U.S. at 455.

#### b. The DHO's description of Hayes' testimony is not substantively different from Petitioner's description

Petitioner claims that the DHO misrepresented Sgt. Hayes' testimony. The DHO reported that Hayes said, "It appeared on the video that inmate Terry pushed the officers [sic] hand away during the pat search." (Doc. 15-1 at 23) Petitioner claims that Hayes later agreed with Petitioner that the video showed "inmate Terry grab officers [sic] Ramos hand as a result of him placing his hands within his

pants." (Doc. 1 at 16)He claimed also that Hayes said that, "some of these older convicts are not used to these 'new' pat frisk." Id.  Even if there were admissible evidence that Hayes said this, this statement is not substantively different from that reported by the DHO.  Both statements agree that Petitioner stopped the officer from using his hands while he was conducting the pat down search.  The Court suspects Petitioner believes that his subjective reason for preventing Ramos' search, was a viable defense to the discipline, it was not.

An assault is a general intent offense[4], meaning the actor's state of mind at the time of the act is not relevant.  For example, if an inmate lunged at a guard as a joke, the reason the inmate lunged would not be significant; the only significance would be whether when he lunged it reasonably appeared to be aggressive.  In short, here, the reason Petitioner grabbed Ramos does not excuse that he, in fact, grabbed Ramos and Ramos understood the act to be aggressive.  The Court understands that Petitioner felt surprised[5] by the manner of the search.  However, there is no evidence that Petitioner lacked the ability to control his hands[6] when he grabbed Ramos in response.  Hence, his act was taken voluntarily and intentionally.

Based upon the foregoing, it does not appear to the Court that the DHO misstated Hayes statement, though he did not quote Hayes' statement related to Petitioner's reasoning for grabbing Ramos' hand.  Again, Petitioner's reasoning for grabbing Ramos' hand was irrelevant to the DHO's determination.  Moreover, because even Plaintiff's version of Hayes' testimony admits that Petitioner grabbed Ramos, there was no due process violation.

### c.   The DHO's decision was supported by some evidence

Petitioner claims that the DHO deprived him of due process, in essence, because Petitioner

---

[4] For example, the Model Jury Instruction reads, "There is a forcible assault when one person intentionally strikes another, or willfully attempts to inflict injury on another, or makes a threat coupled with an apparent ability to inflict injury on another which causes a reasonable apprehension of immediate bodily." Model Crim. Jury Instr. 9th Cir. 8.3 (2010), Model Crim. Jury Instr. 9th Cir. 8.3 (2010).

[5] Moreover, seemingly, inmates probably *should* be surprised by search methods otherwise, they could thwart the effectiveness of the searches.  Nevertheless, the Court agrees with Petitioner that for the safety of everyone involved, ideally, officers would instruct and inform he inmate being searched as to what is happening and what will happen next.

[6] Petitioner repeatedly notes that his action was "involuntary." However, an involuntary action is one that occurs without conscious thought such as breathing, suffering a seizure or a reflexive action—such as when a knee kicks up when struck under the kneecap.  An involuntary act is not one that a person learns such as when he strikes out at someone who touches him in a way he doesn't like.

7

contends the DHO came to the wrong conclusion. The Court construes this argument as a claim that the DHO's decision was not supported by some evidence.

First, Petitioner admitted that he "touched" Ramos though he minimized his actions by saying the touching was inadvertent. (Doc. 15-1 at 32) However, this was not a situation where Petitioner did not intend to "touch" Ramos. He fully intended to prevent Ramos from searching his waistband because he felt Ramos' search of his waistband was inappropriate. However, as discussed above, Petitioner's intent when actively preventing Ramos from completing the search does not control.

Second, Hayes' testimony—even considering only Petitioner's version of it—supports that Petitioner purposefully took action to prevent Ramos from searching Petitioner's waistband by "grab[bing] officers [sic] Ramos hand as a result of him placing his hands within his pants." (Doc. 1 at 16) Even if it mattered whether Petitioner was aware the pat down search required officers to search his waistband, Waller's testimony supports that Petitioner was aware of the requirement given he "loosened his pants" to allow easier access. Id.

Finally, Ramos reported, Petitioner "assaulted me by grabbing and pushing my hand away." (Doc. 15-1 at 14) The fact that Ramos later felt that Petitioner "had suffered enough" over the incident and felt that the assault charge should be dropped, does not undermine the DHO's determination. Though the DHO considered Ramos' new statement, he rejected it as inconsistent with Ramos' prior written report. In addition, Helling documented that "inmate Khalil became verbally assaultive and shoved the officers [sic] right hand away." Id. at 22. There is no evidence that Helling's report was impeached in any way.

Considering all of this evidence, the DHO determined Petitioner was guilty of the assault and, in the Court's evaluation, this determination was supported by "some evidence." Though the DHO could have made a different decision, that does not mean the DHO erred. Thus, the Court rejects Petitioner's claim that he suffered a due process violation.

### d.   There is no evidence the DHO was biased

Petitioner claims that the DHO deprived him of due process because he was biased against him. He claims that the DHO "consistently resisted the encouragement to be fair and impartial." (Doc. 1 at 17) It appears the primary reason Petitioner believes this is that the DHO found him guilty

of the offense and because Petitioner claims the DHO misstated Hayes' testimony.  Thus, for the same reasons set forth above, the Court rejects this claim and finds there was no due process violation.

### IV.     Findings and Recommendation

The Court finds it lacks habeas jurisdiction over the first claim and the other claims fail to demonstrate a due process violation.  Therefore, the Court recommends the petition be **DENIED**.[7]

This Findings and Recommendation is submitted to the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  **Within 21 days** after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and **filed within 10 days** (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    **March 29, 2016**                           **/s/ Jennifer L. Thurston**
                                                                              UNITED STATES MAGISTRATE JUDGE

---

[7] In light of these findings and recommendations, the motion to expedite a decision on the merits of the petition (Doc. 18) is **DISREGARDED** as **MOOT**.